## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CLAUDIA C. CONNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV-22-1095-JD |
| | ) | |
| THE STATE OF OKLAHOMA, d/b/a | ) | |
| OKLAHOMA EMPLOYMENT | ) | |
| SECURITY COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S BRIEF IN OPPOSITION TO DISMISSAL

COMES NOW the Plaintiff and in opposition to the Defendant's Motion to Dismiss (Dkt #6) shows this Court as follows:

### I. - THE STANDARD FOR A MOTION TO DISMISS

On a motion to dismiss, this court must "consider the complaint as a whole, accepting all well-pleaded factual allegations as true, and construing those allegations, and all reasonable inferences therefrom, in the light most favorable to [plaintiff] as the non-moving party." *Huntsinger v. Bd. of Dirs. of the E-470 Pub. Highway Auth*., 35 F. App'x 749, 754 (10th Cir. 2002). In this case, the Defendant's motion primarily complains about a lack of detail, rather than the lack of notice of a plausible claim. "A Rule 8 pleading is not the proper place for the plaintiff to plead all of the evidence or to fully argue the claims." *Chavez v. Huerfano County*, 195 Fed. Appx. 728, 729-730 (10th Cir.2006). "Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). Such details are to be gleaned from discovery, and the "allegations suffice [if they] 'raise a reasonable expectation that discovery will reveal evidence". *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12, 46 (2011). Thus,

-1-

> Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."' ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 555 (2007) (quoting ***Conley v. Gibson***, 355 U.S. 41, 47 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. ***Bell Atlantic Corp., supra***, at 555-556. . .

***Erickson v. Pardus,*** 551 U.S. 89, 93-94 (2007) (other internal citations omitted).

With the proper standards in mind, Plaintiff will address Defendant's arguments.

## II. - PLAINTIFF HAS ADEQUATELY PLED A GENDER PLUS CLAIM

Defendant's motion, Prop. I(A), p.3-5, asserts that Plaintiff has not adequately set out a claim of gender-plus-age. ***Frappied v. Affinity Gaming Black Hawk, LLC***, 966 F.3d 1038, 1047-49 (10th Cir. 2020) recognized gender-plus-age as a viable theory under Title VII, and also explained that a Plaintiff need not show a class-based comparison. Moreover, ***Frappied*** specifically addressed the pleading requirements for such a claim:

> In general, a Title VII plaintiff bringing a claim of employment discrimination in a termination decision must show four elements: '(1) he [or she] belongs to a protected class; (2) he [or she] was qualified for his [or her] job; (3) despite his [or her] qualifications, he [or she] was discharged; and (4) the job was not eliminated after his [or her] discharge.' ***Kendrick v. Penske Transp. Servs., Inc***., 220 F.3d 1220, 1229 (10th Cir. 2000). A plaintiff pleading a sex-plus claim is not required to allege more than these elements***. See Franchina v. City of Providence***, 881 F.3d 32, 53 (1st Cir. 2018) (holding sex-plus plaintiffs need not 'allege more than what is required for traditional sex discrimination claims').

***Id.***, 966 F.3d, at 1050-51.

All of these elements are present in Plaintiff's Complaint.

Plaintiff's Amended Complaint (Dkt #7)  pled that "[a]t the time of her discharge [Plaintiff] was over sixty (60) years of age." ***Id***., Par. 5.  This is factual assertion which satisfies element No. 1.

In her complaint at Par 7, Plaintiff asserted that she "had not been disciplined, warned or counseled about any performance issues as of the time of her discharge."  At Par. 8 she

pled that she "possessed all of the qualifications necessary for her position and was satisfactorily performing her job when she was termination." At Par. 14, she pled that about "one month prior to being terminated, [she] was given a raise." In the same paragraph she stated that Zumwalt "specifically told [her] that she did not need to worry about her continued employment." All of these allegations are factual, even Ms. Conner's opinion that she was performing satisfactorily. While an employee's opinion as to his or her own performance will be insufficient in some instances, at the prima facie stage, the employee's own opinion of satisfactory work is enough. *See Beaird v. Seagate Tech.*, 145 F.3d 1159, 1166 n. 3 (10th Cir. 1998) *cert. denied* 525 U.S. 1054 (1998) (when an employee "insists that his work was satisfactory, [that] is sufficient to satisfy this element of the prima facie case". (Citation to record omitted). Thus, these are factual assertions sufficient to establish element No. 2.

Next Ms. Conner pled that despite her good performance she was terminated, (Amended Complaint, Dkt #7, Par's 7-9), which is a factual pleading and is all that is required for element No. 3.

Finally, Ms. Conner pled at Par. 5 that her job was as "General Counsel" and at Par. 10 she pled that "[f]ollowing her discharge, the General Counsel position continued to exist". That is again a factual statement sufficient to satisfy element No. 4.

Defendant's primary argument is that "Plaintiff makes no allegation that 'she was treated less favorably than others not in the protected class'- gender.[1]" Def's Mt, p. 5. While comparison to non-class members is *one way* to establish a prima facie case, it is **not** a requirement. The Tenth Circuit has "clarified that the fourth element of the prima facie case does not require comparison with a person outside the protected class." *Watts v. City of*

---

[1] Defendant again fails to recognize that her claim is gender-plus-age.

*Norman*, 270 F.3d 1288, 1292-1293 (10th Cir. 2001) (citing ***Kendrick v. Penske Transp. Servs., Inc***., 220 F.3d 1220, 1229 (10th Cir. 2000)). More significantly, as pointed out above, ***Frappied*** *,* in addressing the sufficiency of the pleadings, *specifically rejected a comparison requirement in gender-plus-age cases*. ***Id.,*** 966 F.3d, at 1050-51.

Defendant argues, essentially, that ***Khalik v. United Air Lines***, 671 F.3d 1188, 1192 (10th Cir. 2012) requires a plaintiff to plead more evidence than is required to establish a prima facie case. That, of course, is incorrect, and ***Khalik*** expressly states that. Facts sufficient to establish a prima facie case are, by definition, sufficient to create a presumption of discrimination. ***Gossett v. State of Oklahoma,*** 245 F.3d 1172, 1176 (10th Cir.2001) ("The creation of a prima facie case gives rise to the presumption that the challenged action was the result of unlawful discrimination."). The reason such a presumption arises is explained in ***Kendrick v. Penske Transportation Services, Inc.,*** 220 F.3d 1220, 1229 (10th Cir.2000) and ***Beaird v. Seagate Tech***., 145 F.3d 1159, 1166-67 (10th Cir. 1998) (cert. denied). In ***Kendrick***, our Circuit stated that: "The firing of a qualified minority employee raises the inference of discrimination because it is facially illogical to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement." ***Id***., 220 F.3d, at 1229. In ***Beaird***, our circuit said:

> . . .Left unanswered by the defendant, that presumption mandates a finding of intentional discrimination,. . .because a prima facie case 'eliminates the most common nondiscriminatory reasons for the plaintiff's rejection,' ***Texas Dep't of Community Affairs v. Burdine***, 450 U.S. 248, 254 (1981), namely a 'lack of qualifications or the absence of a vacancy in the job sought,' ***International Brotherhood of Teamsters v. United States***, 431 U.S. 324, 358 n.44 (1977).

*Id.,* 145 F.3d, at 1166-67.

Thus, by pleading the factual elements of a prima facie case of discrimination, Plaintiff has given fair notice of plausible claim and pled everything that is necessary.

**WHEREFORE**, Plaintiff has meet the pleading standards set out in ***Frappied*** and Defendant's motion must be overruled.

## III. - PLAINTIFF HAS ADEQUATELY PLED RETALIATION

Defendant's motion, Prop. I(B), p. 5-7 asserts that Plaintiff has inadequately pled a claim for retaliation,[2] but this is not the case.

Initially, Defendant thinks it important that "[a]t the time of these alleged complaints, Davis did not even work for OESC." ***Id.***, p. 7. This, of course, is irrelevant to the protected nature of the report. "We have held that an employer may be responsible for sexual harassment based upon the acts of nonemployees." ***Turnbull v. Topeka State Hosp***., 255 F.3d 1238, 1244 (10th Cir. 2001) (citing ***Lockard v. Pizza Hut, Inc***., 162 F.3d 1062, 1073 (10th Cir. 1998)). ***See also Holmes v. Utah***, 483 F.3d 1057, 1065 (10th Cir. 2007) "[A]n employer is . . . obligated to protect employees from sexual harassment initiated by outsiders, customers, nonemployees or visitors to workplace premises") and 29 C.F.R. § 1604.11(e) (employer may be responsible for acts of non-employee where employer "knows or should have known of the conduct and fails to take immediate and appropriate corrective action"). Thus, reporting harassment conducted by a third party is necessarily a protected report of unlawful harassment.

Here Plaintiff pled that

16.    Also during her employment, Plaintiff worked with a state vendor, Mark Davis. Plaintiff became aware that Mr. Davis was making inappropriate remarks to young women and men working in the office. Plaintiff counseled Mr. Davis against making these inappropriate remarks and reported the incident to HR. Plaintiff had several conversations about the subject with HR. On November 8, 2021 Plaintiff reported Mr. Davis' inappropriate conduct was continuing.

---

[2] Defendant clouds the issue by arguing about retaliation for reporting age discrimination. Plaintiff's claim is not for retaliation related to any age reports, but rather for "retaliation for reporting sexually inappropriate behavior."

17.     Two days after the report, Plaintiff was terminated without explanation. Shortly after Plaintiff's termination, Mr. Davis was hired as an employee of the OESC and a few months later became an employee of Ms. Zumwalt's husband's firm that has a contract with the OESC.

Amended Complaint, ¶¶ 16, 17.  Plaintiff further clarified that she was "reporting sexually inappropriate behavior" and "sexual harassment of other employees." *Id.,* ¶¶ 18, 21.

Thus, unlike **Khalik**, Ms. Conner identified *when* she complained, *who* the harasser was, *to whom* she complained, and *what* the complaint was about.

Even under Defendant's own statement of the prima facie case, these allegations are sufficient:

Under the *McDonnell Douglas* framework, the employee must first establish his prima facie case. *Id.* This requires proof that: (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse employment action. *Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 605 (10th Cir. 2019).

Def's Mt, p. 6 (emphasis by Defendant).

There is no dispute as to the sufficiency of elements (2) or (3) as termination is clearly an adverse act and the two day period between the last report and the termination is obviously close enough to supply a causal connection. *See Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004) ("A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation . . . .") Further, these are both factual and nonconclusory.

Defendant's initial attack on element (1) is that "Plaintiff alleges no facts regarding what statements were allegedly made by Davis".  Mt, p. 7.  Here Defendant is not asking for facts, but for details which are the purpose of discovery and, in particular, the Defendant demands facts that are beyond what is required to make a protected complaint.

"Defendants contend that [plaintiff's] complaints were too vague, but §2000e-3(a) does not have a vagueness exception." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312,

-6-

315-316 (7th Cir. 2011).   "[No] no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).   Thus, the essential requirement is that the Plaintiff identifies that the discrimination or harassment is based on a protected characteristic such as age or race.  No further details are required for the report to be protected even though more might be necessary to ultimately prove discrimination or harassment:

> The reasonable good-faith belief standard 'empowers employees to report what they reasonably believe is discriminatory conduct without fear of reprisal,' *Bd. of Cnty. Comm'rs*, 405 F.3d at 852, and does not require that the plaintiff 'convince the jury that his employer . . . actually discriminated against him,' *Hertz*, 370 F.3d at 1015-16; *see also Crumpacker*, 338 F.3d at 1171 n.5 (10th Cir. 2003).  The employee's complaint of discrimination may constitute protected opposition even if it is mistaken, so long as the belief that discrimination occurred was objectively reasonable and made in good faith. *See Love v. RE/MAX of Am., Inc*., 738 F.2d 383, 385 (10th Cir. 1984).

*Espinoza v. Dep't of Corr*., 509 F. App'x 724, 729 (10th Cir. 2013).

In short, Ms. Conner's " opposition to discrimination [harassment] could be protected even if her claim had no merit."  *Dean v. Computer Scis. Corp*., 384 Fed. Appx. 831, 840 n. 2 (10th Cir. 2010).

Thus, a general complaint that an employee's  "supervisor and coworkers uttered *racial slurs* and made *derogatory remarks* about him, as well as other racial or ethnic groups" was sufficient a sufficient pleading. *Asebedo v. Kan. State Univ*., 559 F. App'x 668, 670-71 (10th Cir. 2014) (emphasis supplied).  Thus, for pleading purposes, post-*Twombly* jurisprudence also only requires a description of the *kind* of inappropriate comments together with identification of the protected category involved.  Such "allegations suffice [because they] 'raise a reasonable expectation that discovery will reveal evidence" supporting motive. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12, 46 (2011).

Thereafter Defendant overreads **Khalik v. United Air Lines**, 671 F.3d 1188 (10th Cir. 2012). **Khalik** gave some examples of things "the Plaintiff should know and *could* properly plead to satisfy the plausibility requirement." **Id**., at 1194 (emphasis supplied). However, **Khalik** took care to explain that these were mere examples and not invariable requirements. "To be sure, we are not suggesting a court necessarily require each of the above facts. But a plaintiff must include *some* further detail for a claim to be plausible." **Id.**, emphasis supplied.

Thus, Defendant misses the mark in suggesting that Plaintiff must allege why the person terminating her "would harbor retaliatory motive *against her* for reporting the actions of a non-OESC employee". Mt, p. 7. This misunderstands the nature of motive in retaliation. 'Motive', in retaliation cases, is the motive to retaliate for the *act,* and the presence of such motion is generally supplied by the temporal connection between the act and the retaliation:

> The plaintiff may demonstrate a causal nexus between her protected conduct and the adverse employment action 'by proffering "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."' **Stover,** 382 F.3d at 1071 (quoting **Bullington v. United Air Lines, Inc**., 186 F.3d 1301, 1320 (10th Cir. 1999)); *see* **Anderson v. Coors Brewing Co.**, 181 F.3d 1171, 1179 (10th Cir. 1999) ('[T]he closer [the challenged action] occurred to the protected activity, the more likely it will support . . . causation.').

**Lounds v. Lincare, Inc**., 812 F.3d 1208, 1234 (10th Cir. 2015).

Plaintiff's pleading that her termination came two days after her report, suffices to show the termination was motived by the report which is all the proof of motive that is required to satisfy the prima facie case. Nonetheless, Plaintiff's pleading supports a motive to retaliate based on a bias–either personal or financial- towards the harasser. Plaintiff pled that the OESC hired the harasser shortly after her report and, additionally, that the harasser went to work for "Zumwalt's husband's firm [which] had a contract with the OESC", Amended Complaint, ¶ 18. These circumstances infer a personal and/or financial connection

showing motive.  ***Harte-Hanks Commc'ns v. Connaughton***, 491 U.S. 657, 668 (1989) ("a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence").

Finally, Defendant complains that Plaintiff does not plead that the decision-maker had knowledge of her report, but no case has required such proof *at the pleading stage*.  "[T]he general principle [is] that an employee's knowledge gained in the course and scope of the employment is imputed to the corporation, and, therefore, to all of its departments." ***Western Diversified Servs. v. Hyundai Motor Am., Inc***., 427 F.3d 1269, 1276 (10th Cir. 2005). ***Accord State Farm Mut. Auto. Ins. Co. v. Bockhorst***, 453 F.2d 533, 536 (10th Cir. 1972) ("One hand of the company must be charged with what the other hand knows and does.") ***Enstrom v. Beech Aircraft Corp.***, 712 F.Supp. 841, 849 (D.Kan.1989) construed ***Anderson v. Phillips Petroleum Co.***, 861 F.2d 631, 634 (10th Cir.1988) as holding that the opportunity to know of a fact was sufficient to establish the prima facie case.

Of course, Defendant can raise as a defense the claim that the decision-maker had no knowledge of the report, but "a plaintiff is not required to anticipate or plead against an affirmative defense." ***Asebedo v. Kan. State Univ***., 559 F. App'x 668, 671 (10th Cir. 2014).

**WHEREFORE**, Defendant's motion to dismiss the retaliation claim should be denied.

## IV. - OADA CLAIMS ARE NOT SUBJECT TO THE GOVERNMENTAL TORT CLAIMS ACT REQUIREMENTS

Defendant's Prop. II, p. 8-10, asserts that the Plaintiff's right to pursue age or gender discrimination under the Oklahoma Anti-Discrimination Act (OADA) is barred for failure to comply with the requirements of the Oklahoma Governmental Tort Claims Act (OGTCA).

This same argument has been rejected in the District Court of Cleveland County.  See Ex 1 (***Lewis v OU***).  The simple fact is that this argument is foreclosed by the plain text of

the OADA which states that the OADA– **not** the OGTCA– is the exclusive remedy for discrimination claims.  See 25 O.S. § 1101:

> A. *This act provides for exclusive remedies within the state* of the policies *for individuals alleging discrimination in employment on the basis of* race, color, national origin, sex, religion, creed, *age*, disability or genetic information.
> B. This act shall be construed according to the fair import of its terms to further the general purposes stated in this section and the special purposes of the particular provision involved.

Emphasis supplied.

If the OADA is the exclusive remedy for discrimination claims, then obviously the OGTCA cannot control.

Even before the amendment to Sec. 1101(A), it had long been established that the OGTCA requirements do **not** apply to to claims under the Oklahoma Governmental Tort Claims Act (OGTCA).  ***Duncan v. City of Nichols Hills***, 1996 OK 16, 913 P.2d 1303, expressly held that compliance with the notice requirements of the OGTCA *was not required* for claims under the OADA and ***Duncan*** has not been modified by any judicial decision of the State of Oklahoma.

Defendant argues that the OGTCA has been amended to include statutory claims and, by this amendment, it has encompassed OADA claims.  As stated above, that argument is easily disposed of because the more recent amendments to the OADA not only expressly makes the OADA the exclusive remedy for claims of discrimination, but it is also the most specific and the most recent legislative statement.

The OGTCA's adoption of sovereign immunity was in 1985.  Law 1984, SB 469, c. 226, §3 (effective Oct 1, 1985).  The language providing that the OADA is the exclusive remedy for discrimination claim was added in 2011.  See 2011 OK. ALS 270, 2011 OK. Laws 270, 2011 OK. Ch. 270, 2011 OK. SB 837, 2011 OK. ALS 270, 2011 OK. Laws 270, 2011 OK. Ch. 270, 2011 OK. SB 837.  The OADA amendment is shown below with the

language deleted in 2011 shown by strike-throughs, and the added language underlined and in boldface:

> A. ~~The general purposes of this~~ **This** act ~~are to provide~~ **provides** for ~~execution~~ **exclusive remedies** within the state of the policies ~~embodied in the federal Civil Rights Act of 1964, the federal Age Discrimination in Employment Act of 1967, and Section 504 of the federal Rehabilitation Act of 1973 to make uniform the law of those states which enact this act, and to provide rights and remedies substantially equivalent to those granted under the federal Fair Housing Law~~ **for individuals alleging discrimination in employment on the basis of race, color, national origin, sex, religion, creed, age, disability or genetic information** .

The addition of this "exclusive remedy" language should be the end of the question, but ordinary rules of statutory construction reach the same result.

The Supreme Court in *Duncan* reached result in 1996 as a matter purely based on the rule of specificity well before the 2011 amendment. *Duncan* was directly presented with the question of whether the provisions of the OGTCA controlled over the provisions of the OADA, and *Duncan* held that the OADA controls:

> Under Oklahoma law, where two statutes are in conflict, a specific statute will control and act as an exception to a statute of general applicability. In *Taylor v. Special Indemnity Fund*, we restated the general rule:
>> Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and where the special statute covering the subject prescribes different rules and procedures from those in the general statute, it will be held that the special statute applies to the subject matter, and the general statute does not apply.
>
> 804 P.2d 431, 432 (Okla. 1990) (quoting *State ex rel. White v. Beeler*, 327 P.2d 664 (Okla. 1958)). *See also Travelers Ins. Co. v. Panama-Williams, Inc*., 597 F.2d 702 (10th Cir. 1979) (stating the rule that where two statutes unavoidably conflict, the statute most recently enacted controls).

*Duncan, supra*, 1996 OK 16, ¶ 27, 913 P.2d, at 1310.

Here, there are many conflicts between the OADA and the OGTCA, and therefore as to the classes covered by the OADA, it is the more specific act and the one that controls:

**Damages**

OGTCA:   Damages are capped at $175,000/ $125,000 for claims and include emotional

distress.  51 O.S. § 154(A)(2).

OADA:   Damages include backpay and liquidated damage but do not include emotional

distress.  25 O.S. § 1350(G)

**Exemptions From Liability**

OGTCA:   37 exemptions, none of which are contained in the OADA.  51 O.S. § 155.

OADA:   Religious organizations are exempt from coverage, and the defenses available

under corresponding federal statutes are available to the OADA.  25 O.S. §§§

1307, 1350(F).  These defenses do not appear in the OGTCA.

**Notice**

OGTCA:   For actions against the State OGTCA requires notice to be served against the

Office of Risk Management within one year of the event.   51 O.S. § 156(A).

OADA:   Notice must be served on the EEOC or Office of Civil Rights Enforcement

within 180 days from the discrimination.

*The contents of the notices are also different for OADA versus OGTCA claims.*

**Accrual**

OGTCA:   The action accrues either upon denial of the claim or the expiration of 90 days

from submission if no action is taken.  51 O.S. § 157,

OADA:   Issuance of a right to sue letter is required, followed by suit within 90 days

after receipt of the right to sue.  25 O.S. § 1350(B), (I).

To say that the OGTCA applies to the OADA would, in essence, be to repeal the

OADA.  This is not a result that this Court can appropriately reach in light of the contrary

holding in **Duncan** that the OADA controls over the OGTCA as to discrimination claims:

-12-

Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and where the special statute covering the subject prescribes different rules and procedures from those in the general statute, it will be held that the special statute applies to the subject matter, and the general statute does not apply.

***Duncan,*** 1996 OK 16, ¶ 27, 913 P.2d, at 1310 (Quoting ***Taylor v. Special Indemnity Fund***, 1990 OK 106, ¶ 6, 804 P.2d 431, 432.

This conclusion was also reached by Judge Heaton in ***Bruehl v. Okla., ex rel. Okla. Indigent Def. Sys***., No. CIV-13-1247-HE, 2014 U.S. Dist. LEXIS 85374, at *6-9 (W.D. Okla. June 24, 2014):

 The Oklahoma courts appear to have concluded that OADA claims are not torts within the meaning of the GTCA. In ***Duncan v. City of Nichols Hills***, 1996 OK 16, 913 P.2d 1303 (Okla. 1996), the Oklahoma Supreme Court held that time limits under the GTCA do not apply to OADA claims. ***Id***. at 1309-10 ('We find it apparent from the language of the two acts that the legislature intended the [GTCA] to apply to tort actions brought against the state or a political subdivision, whereas the [OADA] statutes were intended to provide redress for the types of discrimination embodied in the federal Civil Rights Acts, even where the action is brought against the state or a political subdivision.'). While ***Duncan*** did not squarely address the question of whether sovereign immunity applied to an OADA claim, it does appear to have concluded that an OADA claim is not a tort claim within the meaning of the GTCA. ***See Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State***, 2003 OK 2, 63 P.3d 535, 539 (Okla. 2003) (discussing OADA claims as examples of claims that do not fall under the GTCA because they are not tort claims); ***see also Wright v. KIPP Reach Acad. Charter Sch***., CIV-10-989-D, 2011 U.S. Dist. LEXIS 49465, 2011 WL 1752248 (W.D. Okla. May 6, 2011) (citing ***Duncan***) ('[T]he OADA's prohibition against handicap discrimination is not a tort claim subject to the GTCA, but is a statutory claim.').

The conclusion that OADA claims are not 'tort' claims within the meaning of the GTCA is less than obvious. The reach of the GTCA's invocation of sovereign immunity is a matter of legislative intent and the Oklahoma legislature enacted a specific definition of 'tort' for the purposes of the Act. 51 Okla. Stat. § 152(14).2 The statutory definition of tort appears to encompass more than the conventional, textbook definition of tort and arguably extends to the wrongs made actionable by the OADA. However, the breadth of the statutory definition was among the issues apparently considered by the ***Duncan*** court, as it reversed the state intermediate appellate court's reliance on the statutory definition in concluding an OADA claim was a 'tort.' ***Duncan***, 913 P.2d at 1305 ('However, the Court of Appeals disagreed, finding ***Duncan***'s claim to be a tort as defined by the Act.'). *In any event,*

-13-

> *notwithstanding the arguably broader statutory definition, the Oklahoma*
> *Supreme Court appears to have concluded an OADA claim is not a 'tort'*
> *under the GTCA and, as the question is a matter of state law, its decision on*
> *the matter is the last word.*

Emphasis supplied.

No matter what rules of statutory construction are applied, it is clear that the OADA governs the OGTCA as to matters of employment discrimination.

Finally, Defendant seems to suggest that the OADA does not constitute a waiver of Oklahoma's sovereign immunity. Again, this is contrary to controlling case law.

First off, the Oklahoma standard for recognizing sovereign immunity requires that a statute expressly assert such immunity over the action created.[3] "Unless ***explicitly*** immunized by law, a political subdivision is now ***liable*** in tort." ***McCathern v. City of Okla. City***, 2004 OK 61, ¶17, 95 P.3d 1090, 1097 n. 40 (quoting ***Jarvis v. City of Stillwater***, 1983 OK 88, ¶10, 669 P.2d 1180, 1111, emphasis by the Court). ***See Gunn v. Consolidated Rural Water & Sewer Dist. No. 1***, 1992 OK 131, ¶6, n 17, 839 P.2d, 1345, 1350 n.17:

> The post-***Vanderpool*** remedial regime makes a political subdivision liable in
> tort unless it is explicitly immunized immunized by law. . . Immunity cannot
> be read into a legislative text that is silent, doubtful or ambiguous.
>
> As Judge Heaton pointed"
>
> While a reading of the statute may very well lead to more than one
> interpretation, '[i]mmunity cannot be read into a legislative text that is silent,
> doubtful or ambiguous.' JMA, 278 P.3d at 1057 (quoting ***Gunn v. Consol.***
> ***Rural Water & Sewer Dist. No. 1, Jefferson Cnty***., 1992 OK 131, 839 P.2d
> 1345, 1349 (Okla. 1992)). The language of the OADA does not reflect a clear
> or unambiguous assertion of sovereign immunity as to such claims. Whatever
> other issues may exist by reason of the referenced definitions, they do not
> constitute an affirmative assertion of sovereign immunity.

***Bruehl***, 2014 U.S. Dist. LEXIS 85374, at *9.

---

[3] This is the opposite of the usual standard for waiving federal immunity, where the person bringing an action must prove the immunity has been waived. In Oklahoma, the State must prove that immunity has been preserved.

Moreover, the OADA specifically provides for liability of the state and governmental entities. 25 O.S. § 1302 prohibits employers from discriminating against any person based on the protected categories in the act and creates "[a] cause of action for employment-based discrimination". 25 O.S. § 1350(A). 25 O.S. § 1350(B) extends that remedy to any "cause of action against an employer". "Employer means. . . a legal entity, institution or organization that pays one or more individuals a salary or wages for work performance". 25 O.S. § 1301(1). As explained in *Duncan*, the OADA " statutes were intended to provide redress for the types of discrimination" set out in that Act "even where the action is brought against the state or a political subdivision." *Duncan*, 1996 OK 16, ¶ 18, 913 P.2d, at 1308.

**WHEREFORE**, it is clear that the OADA supercedes the OGTCA and waives the sovereign immunity of the State.

## CONCLUSION

Defendant's motion to dismiss must be overruled as sufficient facts are pled to establish a plausible claim as to each cause of action. If, however, this Court found that some additional detail needed to be pled, this Court should grant leave to cure such deficiency. "[T]he preferred practice is to accord a plaintiff notice and an opportunity to amend his complaint before acting upon a motion to dismiss for failure to state a claim[.]" *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991). *See Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) ("Dismissal under Rule 12(b)(6) without affording the plaintiff notice or an opportunity to amend is proper only when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.").

**WHEREFORE**, the motion should be denied but, if any portion of the complaint was deemed insufficient, leave to correct the deficiency should be granted.

-15-

**RESPECTFULLY SUBMITTED THIS 2ˢᵗ DAY OF FEBRUARY, 2023.**

HAMMONS HURST & ASSOCIATES

s/ Mark Hammons
Mark Hammons, OBA No. 3784
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-6100
Facsimile:  (405) 235-6111
Email: katie@hammonslaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

A true copy of the foregoing instrument was filed and served on opposing counsel below listed on this 2ˢᵗ day of February, 2023, by use of this Court's ECF system of filing and service:

Justin P. Grose
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
The Heritage Building
621 N. Robinson Ave, Ste 400
Oklahoma City, OK 73102
Ph:     (405) 546-3758
Fax:    (405) 546-3775
Email: justin.grose@orgletree.com          S/Mark Hammons