IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLAUDIA C. CONNER,<br><br>    Plaintiff,<br><br>vs.<br><br>THE STATE OF OKLAHOMA d/b/a<br>OKLAHOMA EMPLOYMENT<br>SECURITY COMMISSION,<br><br>    Defendant. | Case No. CIV-22-1095-JD |

**DEFENDANT THE STATE OF OKLAHOMA d/b/a
OKLAHOMA EMPLOYMENT SECURITY COMMISSION'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND BRIEF IN SUPPORT**

Defendant the State of Oklahoma d/b/a Oklahoma Employment Security Commission ("OESC"), pursuant to LCvR7.1(i), submits its Reply in Support of Its Motion to Dismiss [Doc. No. 10] showing that full dismissal of the claims contained in Plaintiff's Amended Complaint [Doc. No. 7] is appropriate.

**Argument**

**I.  The Tenth Circuit's holding in *Frappied v. Affinity Gaming Black Hawk, LLC* does not excuse Plaintiff from alleging facts that her termination occurred, at least in part, due to her gender.**

While Plaintiff is correct that she may allege a gender-plus-age claim, *see* Pl.'s Br. Opp. to Dismissal 2 [Doc. No. 11], the analysis does not end there. A full reading of the Tenth Circuit's decision in *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038 (10th Cir. 2020), instructs that she must still allege facts to support her claim that OESC discriminated against her because of her gender (even if it is in conjunction with another

characteristic that qualifies as a "plus" category). *See also Stainsby v. Oklahoma ex rel. Okla. Health Care Auth.*, No. CIV-21-1073-D, 2023 WL 1825099, at *4 (W.D. Okla. Feb. 8, 2023) ("And recall that in *Frappied*, the Tenth Circuit stated (no less than three times) that a female sex-plus-age plaintiff 'must show' unfavorable treatment relative to an older male.").

After their former employer laid off many employees, eight women and one man in *Frappied* sued under the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. §§ 621–34, alleging that they were terminated because of their age. 966 F.3d at 1045. The women plaintiffs "brought 'sex-plus-age' disparate impact and disparate treatment claims under Title VII, alleging they were terminated because [their employer] discriminated against women over forty." *Id.* The sex-plus-age claims were initially dismissed by the district court because it concluded that they could not bring such claims under Title VII. *Id.* at 1045, 1049.

Analyzing the sex-plus-age claim first, the Tenth Circuit noted that the claims under Title VII may be brought under 42 U.S.C. § 2000e-2(a)(1), which makes it unlawful to discriminate against someone "because of" their sex; this test incorporates the traditional but-for causation standard. *Frappied*, 966 F.3d at 1045. Alternatively, a plaintiff may bring a claim alleging that her protected characteristic is a "motivating factor" for the challenged employment practice. *Id.* (quoting 42 U.S.C. § 2000e-2(m)). Taking into account the U.S. Supreme Court's recent decision in *Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731 (2020), the *Frappied* court stated, "But so long as sex plays a role in the employment action, it 'has no significance' that a factor other than sex 'might also be at work,' even if

that other factor 'play[s] a more important role [than sex] in the employer's decision.'" *Frappied*, 966 F.3d at 1046; *see also id.* at 1046–47 ("So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger [Title VII]." (quoting *Bostock*, 140 S. Ct. at 1739)). Continuing its analysis, the Tenth Circuit stated that *Bostock* "affirms our ruling in *Coleman* that a female sex-plus plaintiff must show that her employer treated her unfavorably *relative to a male employee who also shares the 'plus-' characteristic*." *Frappied*, 966 F.3d at 1047. Finally, the Tenth Circuit stated:

> In light of *Bostock*, we conclude that a sex-plus plaintiff does not need to show discrimination against a subclass of men or women. Instead, if a female plaintiff shows that she would not have been terminated if she had been a man—in other words, if she would not have been terminated but for her sex—this showing is sufficient to establish liability under Title VII. She need not show her employer discriminated against her entire subclass. In short, we conclude that after *Bostock*, the class of sex-plus claims cognizable under Title VII is broader than we recognized in *Coleman*: we no longer require sex-plus plaintiffs to show discrimination against an entire subclass.

*Id.* Under *Frappied*, Plaintiff must at least allege that her termination is in part due to her sex, i.e., that her sex played a role in her termination.

Summarizing its analysis of sex-plus-age claims in light of *Bostock*, the Tenth Circuit concluded: "Like any other sex-plus plaintiff, a sex-plus-age plaintiff must show unfavorable treatment relative to an employee of the opposite sex who also shares the 'plus-' characteristic. For the female sex-plus-age plaintiffs in this case, the relevant comparator would be an older man."[1] *Id.* at 1048. Plaintiff quotes a portion of *Frappied*

---

[1] "Although in some cases a plaintiff may be able to bring both a Title VII sex-plus-age claim and an ADEA age discrimination claim, the two claims would address two distinct kinds of discrimination—sex discrimination and age discrimination, respectively. Thus, allowing a plaintiff to bring a sex-plus-age claim under Title VII would not allow him or

3

from its Title VII disparate treatment analysis (separate from its Title VII sex-plus-age analysis), *see* Pl.'s Br. Opp. to Dismissal 2, but that portion of the court's analysis later notes that the complaint "does not include any specific factual allegations that would suggest that [the employer] discriminated against any individual plaintiff because of sex," *Frappied*, 966 F.3d at 1051. *Frappied* further observed that "the complaint in this case is devoid of any factual allegations that any individual plaintiff was terminated because of sex," and stated, "[a]s we have explained, female sex-plus plaintiffs must show discrimination compared to men who share the same 'plus-' characteristic." *Id.* It then affirmed the dismissal of this claim below.[2] *Id.* at 1053.

Based on a complete reading of *Frappied*, as well as the other cases outlined in OESC's Motion to Dismiss 3–5 [Doc. No. 10], Plaintiff fails to state a claim of gender discrimination (or gender-plus-age discrimination), and it must be dismissed as a result because she offers absolutely no reason for why OESC terminated her employment *because of* her gender.

---

her to circumvent the requirements of the ADEA." *Frappied*, 966 F.3d at 1048. The same is true here—Plaintiff can bring both an age discrimination and a sex discrimination claim, but each claim requires proof (and necessarily allegations) of the type of discrimination alleged.

[2] In order to state a successful claim, the *Frappied* court said, "if the complaint *did* include non-conclusory allegations that the older women in the group of terminated employees were fired because of age *and* sex, the older women could successfully state a claim for sex-plus-age discrimination." 966 F.3d at 1051 n.8.

**II.     With zero detail provided about the alleged "inappropriate remarks" made by Mark Davis (as opposed to conclusory statements about reporting "sexually inappropriate behavior"), there is no way to evaluate the objective reasonableness of Plaintiff's alleged report and any attendant causation.**

Plaintiff opens her argument stating that "reporting harassment conducted by a third party is necessarily a protected report of unlawful harassment." Pl.'s Br. Opp. to Dismissal 5. But without *any* factual allegations about *what* Plaintiff reported, the Court is left with only conclusory allegations. Plaintiff simply presumes that by using the buzz words "inappropriate remarks" and "sexually inappropriate behavior" she can proceed into costly discovery with her case. She believes that those allegations, alone, show that she engaged in protected activity. *See* Pl.'s Br. Opp. to Dismissal 6.

OESC agrees that Plaintiff's retaliation allegation does appear to invoke the "opposition" clause from Title VII. *See* 42 U.S.C. § 2000e-3(a); *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021). Again, the elements of such a claim are: (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse employment action. *Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 605 (10th Cir. 2019). But without any factual allegations provided by Plaintiff, as opposed to conclusory statements, it is impossible to ascertain whether the complaints she made are based on factual allegations that "she had both a subjective good faith and objectively reasonable belief" that what she complained about violated Title VII (whether the complained-of actions actually violate Title VII is immaterial). *See Reznik*, 18 F.4th at 1260.

Ultimately, what matters is what "a reasonable employee would believe, not 'what a reasonable labor and employment attorney would believe.'" *Reznik*, 18 F.4th at 1262. This objective reasonableness component "'is evaluated based on the knowledge available to the reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee.'" *Id.* at 1263. For example, the employee in *Reznik* received "internal complaints about racial slurs in the workplace from two native Filipino employees . . . ." *Id.* at 1259. These complaints became "so extreme and pervasive that it was interfering with their performance at work as well as their physical and emotional well-being." *Id.* Notably, Title VII does not prohibit discrimination against aliens working for American companies in a foreign country. *Id.* at 1264 (citing 42 U.S.C. § 2000e-1(a). But even though that initial complaint made by the employee was *not* prohibited activity under Title VII, the court in *Reznik* looked at her complaint to determine if it was objectively reasonable by "analyzing the law, the relevant attendance circumstances of "the employee's] job, and the severity, pervasiveness, and duration of the alleged discrimination." *Id.* at 1264. The court reversed and remanded the case. *Id.* at 1265.

Caselaw cited by Plaintiff is inapposite. For example, the court in *Hinds v. Sprint/United Mgmt. Co.* found that "[a]lthough no magic words are required, . . . [g]eneral complaints about company management and one's own negative performance evaluation will not suffice." 523 F.3d 1187, 1203 (10th Cir. 2008). While Plaintiff's Amended Complaint does not allege "general complaints," it still provides no detail about the underlying complaints, which were present in *Hinds*, 523 F.3d at 1202–03. Although Plaintiff's citation to *Dean v. Computer Sciences Corp.*, 384 F. App'x 831 (10th Cir. 2010),

is accurate, it fails to account for the fact that *no factual allegations* have been provided regarding the complaints allegedly made by her to HR.

Whether the decision-maker had knowledge about the alleged complaint is part of Plaintiff's prima facie case—in fact, the third element of a retaliation claim is showing a causal connection between the protected activity and the adverse employment action. *Braxton*, 769 F. App'x at 605. If the decision-maker had no knowledge about the complaint, then how could the decision-maker have retaliated against the complaining party? Plaintiff's reference to *Asebedo v. Kansas State University*, 559 F. App'x 668 (10th Cir. 2014), Pl.'s Br. Opp. to Dismissal 9, is misplaced because the quote is analyzing the *Faragher/Ellerth* affirmative defense, *see Asebedo*, 559 F. App'x at 671. Because the causation element "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer," *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 362 (2013), then there must be a plausible allegation that the decision-maker *knew* of the alleged complaint. Plaintiff fails to make this allegation.

### III. Plaintiff's attempt to save her OADA claims is futile.

To begin, Plaintiff identifies *Duncan v. City of Nichols Hills*, 1996 OK 16, 913 P.2d 1303, *see* Pl.'s Br. Opp. to Dismissal 10–15, for the proposition that it held that the GTCA notice requirements do not apply to OADA claims. *Hauck v. Putnam City Independent School District I001*, No. CIV-20-390-G, 2022 WL 3654749 (W.D. Okla. Aug. 24, 2022), which Plaintiff does not address, specifically addressed *Duncan* and found that it no longer applied, *id.* at *3. In addition, the Honorable Timothy D. DeGiusti—only yesterday—ruled

that the OADA *does require* compliance with the notice provisions of the GTCA. *See Stainsby*, 2023 WL 1825099, at *3–4. *Stainsby* also addressed *Duncan* stating, "Although *Duncan* appears to foreclose Defendant's argument, much has changed since that case was decided." *Id.* at *3. Ultimately, the court in *Stainsby* concluded that the plaintiffs did not plead compliance with the GTCA, which barred their claim. *Id.* at *4. The court also concluded that whether the plaintiffs filed an EEOC charge does not satisfy the GTCA's notice provision requirements. *Id.* (citing *Wright v. KIPP Reach Academy Charter School*, No. CIV-10-989-D, 2011 WL 1752248, at *7–8 (W.D. Okla. 2011).

Plaintiff's arguments ignore that:

- "Tort" is broadly defined by the statute, *see* Okla. Stat. tit. 51, § 152(14); and
- Because compliance with the GTCA is a jurisdictional prerequisite, Plaintiff *must plead* compliance with it.

### Conclusion

Despite Plaintiff's many arguments to the contrary, *all* of her claims must be dismissed based on the arguments presented by OESC—subject, of course, to those claims the Court believes may be amended with additional factual allegations.

Respectfully submitted,

/s/ Justin P. Grose
Justin P. Grose, OBA #31073
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
The Heritage Building
621 N. Robinson Ave., Ste. 400
Oklahoma City, OK 73102
Telephone:   (405) 546-3758
Facsimile:    (405) 546-3775
justin.grose@ogletree.com

*Attorney for Defendant, The State of Oklahoma d/b/a Oklahoma Employment Security Commission*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of February 2023, I electronically transmitted the foregoing to the Clerk of Court using the ECF system for electronic filing. The Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Mark Hammons
Amber Hurst
HAMMONS, HURST, & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, OK 73102
amber@hammonslaw.com
ashley@hammonslaw.com
taylor@hammonslaw.com
*Attorneys for Plaintiff*

/s/ Justin P .Grose
Justin P. Grose